Estate of Harriet B. Laverelle, Deceased.

Argued December 10, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*Roland R. Foulke,* trustee, P. P.

*Raymond M. Remick,* amicus curiae.

Opinion by Baldrige, J., February 27, 1931:

The main question involved in this appeal is whether the orphans' court has the right and power of its own volition to direct a testamentary trustee, to rent a safe deposit box in the name of the estate and keep therein the assets, separate and apart from his own property. The learned court below correctly determined that it had.

Harriet B. Laverelle died on February 10, 1929, having made her last will, dated June 25, 1913, and a codicil, dated August 8, 1922, both of which were duly probated in Philadelphia County, and letters testamentary were granted thereon to Roland R. Foulke, Esq., one of the executors named therein.

The executor filed a first and final account in the office of the register of wills which was called for audit before the orphans' court on October 15, 1929. Under the fifth item of the will, the decedent bequeathed unto her executor $5,000, with directions to pay the income therefrom to her niece during her natural life and, at her death, to pay the principal to the Presbyterian Hospital in Philadelphia. The auditing judge in his adjudication awarded $5,000, to the accountant, in trust for Ida M. Price, for the uses and purposes set forth in the fifth item of the will. No exceptions were filed and the account was confirmed absolutely. In due course, an official examiner was appointed and he filed his report on May 22, 1930, with the auditing judge, showing that the assets to be held in trust were composed of unregistered coupon bonds, aggregating par value of $4,500, which were kept in an envelope marked in the name of the estate in the trustee's individual safe deposit box. Judge VAN DUSEN, the auditing judge, directed the trustee to rent a safe deposit box in his name, as trustee of the estate, and keep the securities of the trust therein. Exceptions were taken thereto, which were duly dismissed, and this appeal was taken.

The appellant's contention, in substance, is, that the orphans' court was without jurisdiction to make the order, as (1) there was no controversy or litigation before the court, and (2) the authority of the orphans' court is limited to the powers specified and enumerated by statute and there is no statutory provision for the exercise of such supervisory powers over the acts of a testamentary trustee as was attempted by the lower court.

Whatever uncertainty may have existed prior to the Act of March 29, 1832, P. L. 190, respecting the jurisdiction of the orphans' court, that legislation and the numerous decisions thereafter definitely determined that the orphans' court is essentially a court of

chancery, and when the jurisdiction once rightfully attaches, it is effective for all purposes incident to the proceeding before it. As was said in McGowin v. Remington, 12 Pa. 56 (63), ''When once a court of equity takes cognizance of a litigation, it will dispose of every subject embraced within the circle of contest, whether the question be of remedy or of distinct yet connected topics of dispute.'' In Black's Exrs. v. Black's Exrs., 34 Pa. 354, Mr. Justice THOMPSON, in discussing the powers of the orphans' court, said, ''It is possessed of chancery powers and can proceed, according to chancery practice to make all such decrees, interlocutory and final, as may be necessary, in the administration of its appropriate duties, subject to review, on appeal to this court.'' In Woodward's App., 38 Pa. 322, Mr. Justice STRONG said, ''It is to be remembered that the orphans' court in settling the accounts of a testamentary trustee is acting as a Court of Chancery, and that in this case it has before it not only the accounting trustee and administrator of the cestui que trust, but the testamentary guardian also, the rights and liabilities of all of whom spring out of one estate, over which the orphans' court possesses the most complete jurisdiction ...... Fortunately for us, testamentary trusts are cognizable in Pennsylvania only in an orphans' court, whose jurisdiction, administered in the forms of a court of equity, is ample to protect and enforce the rights of all parties in interest.'' See also Cutter's Est., 286 Pa. 505.

There can be no question that the orphans' court possesses plenary powers within its particular sphere. Although there was no adverse litigation before the court, the appellant brought himself within its jurisdiction in filing his account, as executor, for the purpose of having it audited. It is true the account had been confirmed before the order was made, but there was no final distribution. The assets were still to be examined by an official examiner and the schedule of

distribution was subject to the court's approval. The court continued in control of the estate and the accountant was subject to its directions. In Postlethwaite's App., 68 Pa. 477 (480), the court said, "It is evident that the jurisdiction of the court having attached by the presentation of the petition, it has entire control of the subject as a court of equity would have. Having all parties before it, it can and ought to make such decree as law and equity require, and which will be binding upon all." Those interested in this estate are entitled to rely upon the assumption that the court will properly protect all of the assets, and a failure to exercise supervision thereover would be a plain dereliction of duty.

Concluding, as we do, that the orphans' court had jurisdiction of the appellant and the trust estate, we come to consider the question as to whether the judicial control extended to the supervisory power exercised.

Under Section 9 of the orphans' court Act of June 7, 1917, P. L. 63, it is provided that the jurisdiction of the orphans' court shall extend to the appointment of trustees and "the control, removal, discharge and settlement of the accounts of trustees so appointed and of testamentary trustees." The power to "control" has a comprehensive significance, including the right to direct, command, dominate (see New Edition of the Oxford Dictionary).

Section 10 of the same act provides that the several orphans' courts shall have full power and authority to make such rules for regulating the practice thereof as in their discretion they shall judge necessary.

Under Section 46 of the Fiduciaries Act of June 7, 1917, P. L. 414, "The several orphans' courts of this Commonwealth shall have power, by general rule or special order, to appoint one or more examiners to make periodical or special examinations of the assets of estates in the hands of fiduciaries, and power to require all persons in whose custody or control such

assets may be held, to present them for such examination.''

The commissioners appointed to codify and revise the laws of decedent's estate, in their report, called particular attention to the fact that prior thereto the courts had not ''explicitly been given this general power (appointing examiners), and the deplorable cases of embezzlement, especially by trustees, that occur from time to time have induced the Commissioners to recommend this provision as at least a partial preventative.''

Under this statutory authority, the orphans' court of Philadelphia County, on February 8, 1918, adopted certain rules of court, including the following:

''Rule IV. An examiner or examiners shall be appointed, who, when directed by an auditing judge, shall examine the securities held by any accountant and report to the judge directing the examination what securities are in the possession of the accountant, how they are registered or otherwise earmarked as the property of the estate to which they belong, and as well where and how the cash belonging to the estate is kept or deposited.''

This power of the court to examine, through its officers, necessarily includes the right to direct preventative or corrective measures; otherwise, an examination without necessary action would be nugatory.

''Rule XIII. All of the assets belonging to a decedent's estate or the estate of a minor must be kept separate and apart from individual assets and properly earmarked. All moneys must be deposited to the credit of the fiduciary of the estate to which the moneys belong and investments held by trustees and guardians shall, wherever possible, be put in their respective names as trustee or guardian, for the particular estate for which the investment is held.''

The appellant argues that there is no authority to sustain this direct power to compel the trustee to per-

form a special act in the administration of a trust fund—such as keeping the securities in a deposit box; that this is but an attempt to exercise "a paternallistic, bureaucratic, unconstitutional and non-judicial power."

We cannot concur in this criticism. Without attempting to elaborate extensively on this animadversion, we think such a judicial exercise of power is not an illegal imposition on a trustee, or beyond the court's right. To our mind, it is but a fulfillment of the lawmakers' intent that the orphans' court should have, and exercise, extended authority over situations of this character. It is evident that the orphans' court has the power within its discretion to take all reasonable precautions to safeguard and preserve the assets of an estate. The honesty of this appellant is not questioned as he enjoys an excellent reputation, but a principle is here involved, which, if appellant's contention is upheld, might very seriously affect other estates. We cannot give our approval to the relaxing of rules that have for their worthy object the correcting of carelessness and preventing dishonest practices which may be detrimental to, and possibly entirely destructive of, a trust estate.

The authority of the court to adopt its own rules is beyond question. As was said in Cunnius v. School Dist., 206 Pa. 469 (477), "Where the intent of a statute is plain and its administration committed to a court of known and established jurisdiction and methods under prior laws on similar subject-matters, such court is authorized to adapt its ordinary forms to the new requirements, or to devise and employ new ones of analogous kind suitable to carrying out the intent of the act. The orphans' court is such a court in regard to this statute. It exercises jurisdiction over the general subject of decedents' estates and the testamentary and administrative agents in regard to them, and has very ample chancery powers in that regard." Testa-

mentary trustees, after all, are but officers of the court and it is right and proper that they should be subject to its control or to removal for any dereliction in the administration of the trust estate (Hamilton v. Mercer Home, 228 Pa. 410) and in the exercise of this authority, especially where charitable uses are involved, it has "broad visitorial and supervisory powers of the Commonwealth:" Toner's Est., 260 Pa. 49.

After a review of this record and a careful consideration of the issues raised, we are of one mind that there is no merit in the assignments of error.

Decree is affirmed.